## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND,
## BALTIMORE DIVISION

**LENWORTH O. DAVIS,**              *

    *Plaintiff*,              *

**vs.**              *

**ASSET ACCEPTANCE, LLC**              *

**and**              *

**FULTON FRIEDMAN &**              *        **Civ. Action No.: 12-cv-982**
**GULLACE, LLP**
                  *

**and**              *

**JOHN DOES 1-10,**              *

    *Defendants.*
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Lenworth O. Davis, ("Plaintiff"), by and through his attorney, E. David Hoskins and The Law Offices of E. David Hoskins, LLC, and for his Complaint against Defendants, Asset Acceptance, LLC; Fulton Friedman & Gullace, LLP and John Does 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations

1

of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* (hereinafter "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (hereinafter "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.* (hereinafter "MCPA").

2.    This lawsuit involves false allegations by Defendant that Lenworth O. Davis allegedly incurred and later allegedly defaulted on a debt to "VISA/MASTERCARD with AMERICAN EXPRESS." This alleged debt will hereinafter be referred to as "the subject debt."

3.    The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692$a$(5) of the FDCPA, as it allegedly arose out of a credit card account that was used primarily for personal, family, or household purposes.

4.    The subject debt is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA.

5.    Defendants have attempted to collect the subject debt by engaging in "communications" as defined in 15 U.S.C. § 1692$a$(2) of the FDCPA.

## **JURISDICTION AND VENUE**

6.    Jurisdiction arises under the FDCPA, 15 U.S.C. §1692$k$(d) and

28 U.S.C. § 1331.

7.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

8.     Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendants transact business in this District and a substantial portion of the acts that give rise to the claim occurred within this District. Additionally, Plaintiff resides within the District of Maryland.

**PARTIES**

9.     Lenworth O. Davis is an individual who was at all relevant times residing in Baltimore County, Maryland.

10.     Lenworth O. Davis is a "consumer" as defined in 15 U.S.C. § 1692$a$(3) of the FDCPA, as he is a natural person improperly sued in the attempt to collect a consumer debt allegedly owed by another consumer. Lenworth O. Davis is a "person" as that term is defined by the MCDCA and the MCPA.

11.     Defendant, Asset Acceptance, LLC, ("AALLC") is a limited liability company originated pursuant to the laws of Delaware. AALLC is authorized to do business in Maryland and subject to personal jurisdiction in Maryland.

12.     AALLC claims to have purchased a debt owed to "VISA/

MASTERCARD with AMERICAN EXPRESS." At the time of the alleged purchase, the subject debt was alleged to be in default. AALLC holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation. AALLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers, which it purchases after these debts have gone into default. In 2011, AALLC retained counsel to file 1,154 lawsuits in the District Court of Maryland.

13.    Defendant Fulton Friedman & Gullace, LLP ("FFG") is a limited liability partnership, believed to be headquartered in Rochester, New York, that maintains a Maryland office at 7350-B Grace Drive in Columbia, Maryland. FFG is a company engaged in the business of collecting debts alleged to be due another in the State of Maryland, and uses the United States Mail in furtherance of their collection of debts alleged to be due another. FFG communications with consumers, including pleadings filed in the District Court of Maryland, state "This communication is from a debt collector." FFG is currently authorized to do business in Maryland, but its legal status was forfeited from November 15, 2011 through March 9, 2012. FFG regularly collected debt in Maryland during the time its legal status was forfeited. FFG holds an active collection agency license with the State of

Maryland, Department of Labor, Licensing and Regulation for its location in Riverview, Florida (effective March 27, 2012), but not for its location in Columbia, Maryland, the license for that location having expired on March 19, 2012.

14.    Defendants John Does 1-10, are individuals whose identities are not known to Lenworth O. Davis at this time, but which will become known upon proper discovery.

15.    AALLC hired FFG to collect the subject debt and is vicariously liable for the acts and omissions of FFG.

16.    At all relevant times Defendants AALLC and FFG acted as a "debt collector" within the meaning of 15 U.S.C. §1692$a$(6) of the FDCPA. AALLC is not a creditor of Lenworth O. Davis, but rather is a debt buyer attempting to collect a consumer debt in default that it alleges is owed by Lenworth O. Davis. FFG regularly collects or attempts to collect, directly or indirectly, debts asserted to be owed or due another.

17.    At all relevant times Defendants AALLC and FFG acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

18.    The acts of Defendants AALLC and FFG alleged herein were

performed by its employees acting within the scope of their actual or apparent authority.

19.     At all relevant times each Defendant was the principal, agent, partner, affiliate, successor in interest or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Each Defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other defendants.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A.     *The District Court of Maryland Process*

20.     The District Court of Maryland was created by an amendment to the Maryland Constitution and came into existence on July 5, 1971. In civil cases the District Court has exclusive jurisdiction in claims for amounts up to $5,000 and concurrent jurisdiction with the circuit courts in claims for amounts above $5,000 but less than $30,000.

21.    The District Court is a statewide court with 34 locations in 12 districts, and a staff including 107 judges. The Court hears disputes relating to landlord tenant matters, civil claims and criminal charges.

22.    The workload of the District Court has seen tremendous growth since its inception in 1971. In its first year, the Court processed just under 800,000 cases; today, more than two million cases are filed annually.

23.    Most collection lawsuits are filed in the District Court and, far too often, result in default judgments in favor of the party bringing the lawsuit when the defendant fails to appear and defend the action.

24.    Statistics published for Fiscal Year 2010 show that of the 300,453 total judgments entered, 247,435 (or roughly 82%) were not contested.

25.    The practice and procedures relating to the Maryland District Courts are established in Title 3 of the Maryland Rules.

26.    In the typical collection case, a defendant has fifteen days after being served with the summons and complaint to file a Notice of Intention to Defend explaining why he or she should not be required to pay the money the complaint alleges is owed. If a Notice of Intention to Defend is not filed, a streamlined process exists for obtaining a judgment based upon

an affidavit.

27.    Maryland Rule 3-306 governs this process and allows the plaintiff in a collection action to include a demand for judgment on affidavit with the complaint. Under Maryland Rule 1-202(b) the affidavit must be "a written statement, the contents of which are affirmed under the penalties of perjury to be true."

28.    In 2011, Rule 3-306 required that the complaint be supported by an affidavit, made on personal knowledge, showing that the plaintiff was entitled to judgment as a matter of law. Rule 3-306 also required that the affidavit set forth facts that would be admissible in evidence and show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Finally Rule 3-306 required that the affidavit be accompanied by supporting documents or statements containing sufficient detail as to liability and damages.

29.    Under Maryland Rule 1-311(b), the signature of an attorney on a a complaint constitutes a certification that the attorney has read the complaint and that to the best of the attorney's knowledge, information, and belief there is good ground to support the filing of the complaint.

## B.   *Debt Buyers Lack the Evidence Required by Rule 3-306*

30.   One outgrowth of the global financial crisis has been an increase in the volume of accounts that are sold to debt buyers such as AALLC. Such sales occur only after the original creditor has made the business decision to sell all right, title and interest in the account, rather than outsource the collection or pursue the collection themselves. Thus, when a debt buyer is involved, the original creditor has already decided that the account is not worth pursuing, which is why the accounts are sold for pennies on the dollar.

31.   Debt buyers frequently lack the documentation to prove the terms and conditions of underlying obligation, and also lack the proof necessary to show the entire chain of assignment of the debt. Once the original creditor sells the account for pennies on the dollar, it does not want to be bothered with it again because it no longer has any financial interest in the account. For this reason, almost every agreement between original creditor and initial debt buyer purchaser (and between the original debt buyer purchaser and each subsequent assignee) is made without representations and warranties, and without recourse.

32.   The Court of Appeals of Maryland concluded that this overall

lack of proof often leads to dubious judgments entered by default, and on September 8, 2011, made major changes to Rule 3-306 to become effective with cases filed after January 1, 2012. In the words of the Hon. Alan Wilner in his report to the Maryland Court of Appeals:

> The problem, which has been well documented by judges, the few attorneys who represent debtors, and the Commissioner of Financial Regulation, is that the [debt buyer] plaintiff often has insufficient reliable documentation regarding the debt or the debtor and, had the debtor challenged the action, he or she would have prevailed. In many instances, when a challenge is presented, the case is dismissed or judgment is denied. In thousands of instances, however, there is no challenge, and judgment is entered by default.

33.     Judge Wilner's observation was validated by the industry itself. Specifically, in a January 19, 2011, letter to the Rules Committee, industry representative ACA International, The Association of Credit and Collection Professionals, stated its concern about the requirement that a debt buyer must provide the court with "a certified or otherwise properly authenticated photocopy of original of certain documentation establishing proof the consumer debt at issue existed."

34.     The reason the industry opposed the requirement of "proof the consumer debt at issue existed" is because, in their own words:

> The above documentation is often unattainable for a

variety of reasons, the most important of which is that the original creditor no longer has the information or did not have it when selling an account or turning the account over for collection. Particularly in the context of credit cards, financial institutions are not required under federal law to maintain this type of information beyond two years.

35.    The argument presented by the industry was, in essence, that (1) because the original creditors do not have the documentation; and (2) because federal law does not require that the original creditors keep their records; therefore (3) the debt buyer industry should not be required to comply with the same rules of evidence that govern disputes of every other litigant who comes before the Court. No other type of plaintiff can successfully sue for breach of contract without offering any proof of the terms and conditions of the contract. Yet, this is precisely what is attempted every day by debt buyers, such as AALLC.

36.    The amendments to Rule 3-306 that apply to new complaints filed after January 1, 2012, clarified the evidentiary requirements that a debt buyer must meet when seeking a judgment on affidavit.

a.    The debt buyer must prove the existence of the debt by a certified or otherwise properly authenticated photocopy or original of at least one of the following: (A) a document signed by the defendant

evidencing the debt or the opening of the account; (B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by the defendant; or (C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments, or other actual use of a credit card or account by the defendant.

b.      The debt buyer must prove the terms and conditions to which the consumer debt was subject, by producing a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue.

c.      The debt buyer must prove that it owns the consumer debt at issue by providing a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the original creditor; and a certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner.

d.      The debt buyer must identify the nature of the debt or account by including in the affidavit the following information: (A) the name of the original creditor; (B) the full name of the defendant as it

appears on the original account; (C) the last four digits of the social security number for the defendant appearing on the original account, if known; (D) the last four digits of the original account number; and (E) the nature of the consumer transaction, such as utility, credit card, consumer loan, retail installment sales agreement, service, or future services.

e.      The debt buyer must provide information relating to any charge-off of the account and an itemization of all money claimed by the debt buyer.

37.      Proof of these items has always been required to obtain a judgment. The amendment was put in place to provide an evidentiary checklist for practitioners and judges and provide protection to debtors who do not challenge or defend the claims from having a judgment entered by default that is not supported by legally sufficient evidence establishing the plaintiff's entitlement to relief and damages.

## C.      *Defendants Attempt to Collect a Debt by Filing a Frivolous Lawsuit against Lenworth O. Davis in the District Court of Maryland*

38.      Plaintiff, Lenworth O. Davis has never applied for or held a credit card of any kind.

39.      Plaintiff, Lenworth O. Davis has never resided at 1217 Linworth

Avenue, Apartment 3D, Baltimore, MD 21239-4068.

40.    Sometime on or before December 24, 2011, AALLC placed an entry on Plaintiff Lenworth O. Davis' TransUnion credit report alleging that Mr. Davis had an open collection account with AALLC in the amount of $3,987. American Express was listed as the original creditor.

41.    Sometime during or before December 2011, AALLC placed an entry on Plaintiff Lenworth O. Davis' Equifax credit report alleging that Mr. Davis had an open collection account with AALLC in the amount of $3,987. The account number was listed as "AMERICAN -39828*."

42.    Sometime during or before December 2011, AALLC placed an entry on Plaintiff Lenworth O. Davis' Experian credit report alleging that Mr. Davis has an open collection account with AALLC in the amount of $3,987. The original creditor listed was "American Express" and the account number listed was "3928...."

43.    Sometime before March 4, 2011, AALLC hired FFG to collect an alleged consumer debt from Plaintiff Lenworth O. Davis. This debt regarded an alleged "VISA/MASTERCARD with AMERICAN EXPRESS" with an account number ending in "1006," on which another consumer of the same name allegedly defaulted and owes $2,990.72. This debt allegedly

was assigned to AALLC.

44.    AALLC directed FFG to collect the alleged debt by filing litigation in the District Court of Maryland for Baltimore City against Plaintiff Lenworth O. Davis without first determining whether the Plaintiff was the debtor actually obligated to pay the subject debt.

45.    On March 4, 2011, FFG, on behalf of AALLC drafted a complaint seeking a judgment in the amount of $3,577.22 against Plaintiff Lenworth O. Davis for allegedly failing to pay a debt owed on a "VISA/ MASTERCARD with AMERICAN EXPRESS." **Exhibit 1**.

46.    On March 22, 2011, FFG, on behalf of AALLC filed the Complaint in the District Court of Maryland for Baltimore City. Shortly thereafter, FFG caused service of the summons and complaint to be made on Lenworth O. Davis at 524 Castle Drive Apt E, Baltimore, MD, 21212. This address is located in Baltimore County.

47.    Lenworth O. Davis has never received a demand to pay the alleged amount due or a validation notice under 15 U.S.C. § 1692g. The service of summons is the first communication received by Lenworth O. Davis regarding any credit card debt from either an original creditor or a debt collector.

48.    The District Court Complaint listed Lenworth O. Davis' address at 1217 Linworth Avenue, Apartment 3D, Baltimore, Maryland 21239-4068. Lenworth O. Davis has never resided at that address and was not served at that address.

49.    The Complaint was "signed" by FFG employee Christopher Moylan in the following manner:



50.    A search on the Maryland Judiciary Case Search website discloses that Moylan filed 2,274 cases in District Court in 2011. On the same day he filed the Complaint against Lenworth O. Davis, Moylan filed other complaints in Frederick County District Court, Baltimore City District Court, Charles County District Court, Saint Mary's County District Court, Montgomery County District Court, Towson District Court, and Carroll County District Court. As demonstrated below, this complaint was not supported by legally sufficient evidence establishing AALLC's entitlement

to relief and damages in the hope that Lenworth O. Davis would default and that the District Court would grant a judgment on affidavit.

51.    FFG employee Moylan requested a judgment on affidavit, supported by an "Affidavit of Account," signed by Joni Eatman-Neill, that was filed with the Complaint. **Exhibit 2**. AALLC controlled and directed the efforts of Joni Eatman-Neill, FFG and Moylan to collect the alleged debt.

52.    The "Affidavit of Account" failed to comply with the requirements of Rule 3-306 in several respects.

a.    The affidavit did not mention Lenworth O. Davis or any account or debt owed by Mr. Davis. The affidavit mentioned only "the receivable" and "Defendant." The affidavit failed to mention the following information: (A) the name of the original creditor; (B) the full name of the defendant as it appears on the original account; (C) the last four digits of the social security number for the defendant appearing on the original account, if known; (D) the last four digits of the original account number; and (E) the nature of the consumer transaction, such as utility, credit card, consumer loan, retail installment sales agreement, service, or future services.

b.    The affidavit did not assert that Joni Eatman-Neill had personal knowledge about Visa, Mastercard, American Express, or the debt. Rather, the only personal knowledge asserted was of AALLC:

1.    I am an employee of ASSET ACCEPTANCE, LLC ("Asset"), as am competent to testify to the matters stated herein.

2.    I am familiar with the manner and method by which Asset creates and maintains its business records, including computer records of its accounts.

*See* **Exhibit 2**, ¶ 1.

c.    Since the affidavit was not based upon personal knowledge of the business records of American Express, it failed to present admissible evidence that (1) the alleged debt ever existed; (2) that Lenworth O. Davis was legally obligated to pay the alleged debt to American Express; (2) that the alleged debt had not been paid, and (3) the amount, if any, still owed on the alleged debt.

d.    Joni Eatman-Neill failed to state under the penalties of perjury that the statements in the affidavit were true.

53.    A "Bill of Sale" was attached to the "Affidavit of Account" purporting to establish ownership of the subject debt by AALLC, as assignee of either American Express Centurion Bank or American Express

18

Bank, FSB. This document was legally insufficient because the Bill of Sale makes no mention of Lenworth O. Davis or any account or debt of his and fails to demonstrate that AALLC has any ownership of any debt alleged to be owed by Lenworth O. Davis. The document also fails to establish that any account or debt relating to Lenworth O. Davis was included in the accounts sold by either American Express Centurion Bank or American Express Bank FSB.

54.    The "Bill of Sale" is not a valid assignment. It references a "Purchase Agreement" though no such agreement was attached. It also references a "Cut-Off Date Account File" though no such document is attached. It contains duplicate signatures though no authorization for duplicate signatures was attached. It contains no signature from American Express Bank, FSB, or any signature identifying AALLC as the purchaser.

55.    FFG and AALLC failed to allege or prove the existence of the debt by providing at least one of the following: (A) a document signed by Lenworth O. Davis evidencing the debt or the opening of the account; (B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by Lenworth O. Davis; or (C) an electronic printout or other documentation from the original creditor establishing the

existence of the account and showing purchases, payments or other actual use of a credit card or account by Lenworth O. Davis.

56.   FFG and AALLC failed to allege or prove the terms and conditions to which the consumer debt was subject, by producing a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue.

57.   FFG and AALLC failed to provide information relating to any charge-off of the account and an itemization of all money claimed by AALLC.

58.   Based on this flimsy documentation, Moylan and FFG asserted that AALLC was the assignee of a "VISA/MASTERCARD with AMERICAN EXPRESS" and sued Lenworth O. Davis on a contract theory.

59.   The defects in the Complaint and "Affidavit of Account" were obvious and readily discoverable to the point that no reasonable attorney that read the complaint before signing it would conclude that good legal and factual grounds existed to file a claim against Lenworth O. Davis on behalf of AALLC as assignee of either American Express, American Express Centurion Bank, American Express Bank FSB, Visa, or Mastercard. The Complaint and "Affidavit of Account" were so glaringly defective that they

could not be filed in good faith.

60.   Lenworth O. Davis sent letters to the three major credit reporting bureaus disputing the entries by AALLC on the following dates: Experian, February 1, 2012; Equifax, February 13, 2012; TransUnion, February 15, 2012.

61.   Plaintiff's continued to pursue their lawsuit against Mr. Davis despite his notification to the three major credit bureaus that he disputed the alleged debt to AALLC.

62.   A trial on the claim was held on March 13, 2012. At the conclusion of the initial case in chief, judgment was entered in favor of Lenworth O. Davis and against AALLC based upon AALLC's failure to prove that Lenworth O. Davis was the consumer responsible for the subject debt or that AALLC was the owner of the subject debt.

### D.   *Plaintiff Suffered Actual Damages*

63.   As a result of the acts of FFG and AALLC, Plaintiff became distressed and frustrated, and otherwise suffered from emotional distress.

64.   As a direct consequence of the acts, practices and conduct of FFG and AALLC, the Plaintiff suffered and continues to suffer from emotional distress and frustration.

## COUNT I

## Violation of the Fair Debt Collection Practices Act
### 15 USC 1692, *et. seq*.

65.   Lenworth O. Davis hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

66.   As alleged above, in its attempts to collect the aforementioned alleged debt, Defendants violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692*e*. Defendants sued Lenworth O. Davis for a debt that he was not legally obligated to pay. In the complaint filed against Lenworth O. Davis in the District Court of Maryland, Defendants falsely represented the character of the alleged debt in violation of 15 U.S.C. § 1692*e*(2)(A) by asserting that the debt was for an American Express account, when Defendants knew, or should have known, that they lacked legally sufficient proof that Lenworth O. Davis owed a debt to American Express.

67.   In the complaint filed against Lenworth O. Davis in the District Court of Maryland, Defendants' communication with Lenworth O. Davis contained a false impression of the character, amount, or legal status of the

alleged debt in a violation of 15 U.S.C. § 1692*e*(2). Defendants' complaint included a false representation that Lenworth O. Davis had a preexisting credit card debt with Visa/Mastercard or American Express when Defendants knew, or should have known, that they lacked legally sufficient proof that Lenworth O. Davis owed such a debt.

68.    Defendants communicated credit information which they knew or should have known was false, including the failure to communicate that the alleged debt was disputed in violation of 15 U.S.C. § 1692*e*(8). Defendants' complaint alleged that Lenworth O. Davis owed a debt to AALLC when it knew, or should have known, that it lacked legally sufficient proof that Lenworth O. Davis owed such a debt. Defendants' also failed to communicate to the District Court of Maryland that Lenworth O. Davis disputed the alleged debt once Mr. Davis filed his disputes with Experian, Equifax and TransUnion.

69.    In the complaint filed against Lenworth O. Davis in the District Court of Maryland, Defendants used deceptive means to attempt to collect a debt in violation of 15 U.S.C. § 1692*e*(10) by attempting to obtain a judgment on affidavit based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

70.    In the complaint filed against Lenworth O. Davis in the District Court of Maryland, Defendants used unfair and unconscionable means to attempt to collect a debt in violation of 15 U.S.C. § 1692*f* by asserting that the debt was for an American Express account, when Defendants knew, or should have known, that they lacked legally sufficient proof that Lenworth O. Davis owed a debt to American Express; and by attempting to obtain a judgment on affidavit based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

71.    In filing a complaint against Lenworth O. Davis in the District Court of Maryland when Defendants knew or should have known that they lacked legally sufficient proof that Lenworth O. Davis owed a debt to AALLC or American Express, Defendants' engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692*f*.

72.    In filing a complaint against Lenworth O. Davis in the District Court of Maryland, Baltimore City when Defendants knew or should have known that Lenworth O. Davis lived in Baltimore County, Defendants brought a legal action to collect a debt against a consumer in a location

other than where the contract was signed or where the consumer resides in violation of 15 U.S.C. § 1692i(a)(2).

## COUNT II

### Violation of the Maryland Consumer Debt Collection Act
### Md. Code Ann., Com. Law, § 14-201, *et seq.*

73.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

74.    The alleged debt at issue in this dispute was a debt which was primarily for personal, family, or household purposes and is therefore a "consumer transaction" as that term is defined by the MCDCA.

75.    In the complaint filed against Lenworth O. Davis in the District Court of Maryland, Defendants attempted to enforce a right with knowledge that the right does not exist in violation of Md. Code Ann., Com. Law. §14-201(8) by asserting that the debt was for an American Express account, when Defendants knew, or should have known, that it lacked legally sufficient proof that Lenworth O. Davis owed a debt to American Express; and by attempting to obtain a judgment on affidavit based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

76.   As a direct consequence of the acts, practices and conduct of FFG and AALLC, the Plaintiff has been denied credit and suffered and continues to suffer from emotional distress and frustration and is therefore entitled to actual damages pursuant to Md. Code. Ann., Com. Law. §14-203 from Defendants.

## COUNT III

### Violation of the Maryland Consumer Protection Act
### Md. Code Ann., Com. Law, § 13-101, *et seq*.

77.   Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

78.   The foregoing acts and omissions of Defendants constitute a violation of the MCPA as unfair and deceptive trade practices.

79.   As a result of Defendants' violation of the MCPA, Plaintiff has suffered an injury or loss and is entitled to actual damages and attorneys fees pursuant to Md. Code Ann., Com. Law §13-408.

WHEREFORE, Plaintiff, Lenworth O. Davis, respectfully prays for a judgment against Defendants, jointly and severally, as follows:

a.   Actual damages pursuant to 15 U.S.C. § 1692$k$(a)(1); Md. Code. Ann., Com. Law. §14-203; and Md. Code Ann., Com. Law §13-408 in

the amount of $250,000.00;

      b.    Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692$k$(a)(2)(A);

      c.    Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692$k$(a)(3) and Md. Code Ann., Com. Law §13-408; and

      d.    For such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of his claims in this action.

      Respectfully Submitted,


      */s/ E. David Hoskins*
E. David Hoskins, Bar No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
*dhoskins@hoskinslaw.com*